# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-01880-SCT

*JOHN LEE FRANKLIN a/k/a JOHN FRANKLIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2013 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER A. COLLINS |
| | STEVEN KILGORE |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. John Lee Franklin was found guilty of arson by a Scott County jury. The Scott County Circuit Court sentenced Franklin to eighteen years in the custody of the Mississippi Department of Corrections and ordered that Franklin pay a $1,500 fine, make restitution to the dwelling house owners in the amount of $10,000 and make restitution to the victim in the amount of $3,000. The court ordered that the fine and restitutions be made in monthly installments of $150, with the first payment due ninety days following Franklin's release from confinement. Franklin appeals, arguing two issues: (1) the trial court erred in assessing

restitution; and (2) the trial court erred in admitting Franklin's confession into evidence. Finding no merit in either issue, we affirm the trial court judgment.

**FACTS**

¶2. Franklin and his girlfriend, Amanda Ormond, lived together with their children in a house they rented from Eddie and Peggy Johnson located at 328 West Fourth Street in Forest, Mississippi. The couple started having relationship problems, and Franklin began spending several nights sleeping in his car.

¶3. One day in September 2012, Amanda drove to Meridian, Mississippi, to pick up her friend, Scott Smith. The two drove back to Amanda's sister's house that evening. Around 10:45 p.m., Amanda, Scott, and Amanda's one-year-old son Jacoby, drove back to Amanda's house on West Fourth Street. When they arrived, Scott put Jacoby to bed and sat down to watch television. Around 1:20 a.m., Amanda left to take her sister's keys back to her house.

¶4. While she was gone, Scott heard banging coming from the back door near the laundry/utility room. When Amanda arrived home minutes later, Scott told her about the noise. Amanda opened the door to the laundry/utility room and saw flames.

¶5. Scott ran to get Jacoby, Amanda grabbed her purse, and they all ran out of the house. Amanda called 911. Both Amanda and Scott saw Franklin running from behind the house as they waited for the firemen to arrive.

¶6. Deputy Fire Marshall Pete Adcock investigated the fire and determined that it was incendiary. Franklin was arrested and gave a statement to Investigator Tom Rigby of the Forest Police Department, stating as follows:

2

That Thursday, Amanda told me to leave. I kept walking. I came back around nine o'clock that night to talk to her. When I got to her house, she was gone. I had a key to the car, and then I got in the car and left. She said she was going to give me the car, but [sic] hadn't put it in my name. I came back around twelve-thirty that night. I heard voices inside her house and saw her in the house with another guy. I then sat down and started to cry and then I heard the van leave. I then lost it and went and got a pair of longjohns and soaked them in gas and then struck the match and lit the longjohns on fire and threw them up into the attic. I–I left after that.

¶7. Amanda stated that Franklin called her the day after the fire and "he stated that he had set the house on fire because [she] didn't want him no more, and that [she] had another man holding his baby."

¶8. Franklin was charged with arson and found guilty. He was sentenced to serve eighteen years in the custody of the MDOC. He also was sentenced to pay a $1,500 fine and to pay a total of $13,000 in restitution upon his release. This appeal followed. Additional facts, as necessary, will be related in our analysis.

## ANALYSIS

### I. Whether the trial court erred in ordering Franklin to pay restitution.

¶9. Franklin claims the trial court erred in assessing restitution because the trial court did not meet the requirements set forth in Mississippi Code Section 99-37-3 (Rev. 2007). The State contends that Franklin waived this issue by not objecting to the order of restitution at sentencing.

¶10. We agree with the State. Franklin waived this issue by not objecting to the restitution order at trial. *See Harris v. State*, 757 So. 2d 195, 199 (Miss. 2000) (holding that because the defendant did not object to the issue of restitution in the trial court, the issue was barred

3

upon appeal); *see also* **Powell v. State**, 536 So. 2d 13, 17 (Miss. 1988) (same); **Watts v. State**, 492 So. 2d 1281, 1290-91 (Miss. 1986) (same).

¶11.    Procedural bar notwithstanding, this issue is meritless.  Section 99-37-3(1) states in part as follows: "When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim . . . ."  Miss. Code Ann. § 99-37-3(1).  Section 99-37-3(2) requires the trial court to consider the following:

> (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;
>
> (b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and
>
> (c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

¶12.    According to the record, the trial court heard evidence of the amount of damage caused by Franklin's crime.  The court questioned Franklin as to his ability to pay that amount.  Afterward, the trial court ordered that Franklin pay a part of the total claimed and ordered that it be paid in monthly installments, to which Franklin did not object.  *See* Miss. Code Ann. § 99-37-3(3) ("If the defendant objects to the imposition, amount or distribution of the restitution, the court shall, at the time of sentencing, allow him to be heard on such issue.").  For these reasons, we find no error in the trial court's restitution order.

> **II.    Whether the trial court erred in denying the motion to suppress Franklin's statement.**

¶13.    Franklin contends that his ***Miranda***[1] waiver and confession were involuntary because during interrogation, Franklin had stated to Investigator Rigby that he needed help. Franklin argues that because Investigator Rigby failed to inquire further what help Franklin needed, the State failed to meet its burden of proof that his confession was voluntary.

¶14.    For a confession to be admissible, it must have been given voluntarily and not as a result of promises, threats, or inducements. ***Morgan v. State***, 681 So. 2d 82, 86 (Miss. 1996). Once a defendant alleges that his confession was coerced, he secures a due-process entitlement to a reliable determination that his confession was not given as a result of coercion, inducement, or promises. ***Id***. The State shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary. ***Id***. The State's burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward. ***Chase v. State***, 645 So. 2d 829, 838 (Miss. 1994). A trial court's findings of fact on the issue of admissibility of a confession will not be overturned unless it is clearly erroneous or contrary to the overwhelming weight of the evidence. ***Morgan***, 681 So. 2d at 87.

¶15.    During the suppression hearing, Investigator Rigby testified that he read Franklin his ***Miranda*** warnings prior to the interview and that Franklin acknowledged he understood them. Franklin signed the waiver. Investigator Rigby testified that no threats were made and no promises were given. Investigator Rigby testified that Franklin never asked for an attorney and never asked that the questioning stop. When asked during cross-examination

---

[1] ***Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

if Franklin had ever asked for help, Investigator Rigby said Franklin had stated that "he needed some kind of . . . health help." Investigator Rigby testified that he took this to mean that Franklin was talking about his "day to day activities." Investigator Rigby stated that he did not think Franklin was asking for an attorney. The trial court questioned Investigator Rigby further and asked at what point during the interview Franklin made the statement that he needed help. According to Investigator Rigby, Franklin made the statement toward the end of the interview.

¶16. At the conclusion of the suppression hearing, the trial court found that Franklin's *Miranda* waiver was knowingly and voluntarily given. No threats or promises were made to Franklin in exchange for his waiver and subsequent confession. The trial court agreed with the State that Franklin was not referring to an attorney when Franklin made the statement that he needed help.

¶17. We find no abuse of discretion in the trial court's ruling. The record supports the finding that Franklin was advised of his *Miranda* rights, that he knowingly and intelligently waived his rights, and that he freely and voluntarily confessed to setting fire to the house. We also agree with the trial court that Franklin's statement that he needed "help" was insufficient to invoke his right to counsel. *See Barnes v. State*, 30 So. 3d 313, 317 (Miss. 2010) ("A defendant must articulate his desire to have counsel present sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."). The statement could constitute a request for any number of

6

different types of aid. And it was unreasonable in this instance for Franklin to expect Inspector Rigby to discern what sort of help he wanted.

¶18. We find this issue is without merit.

¶19. The separate opinion's contention that the Mississippi Constitution provides greater protection to criminal suspects who invoke the right to counsel during custodial interrogations than does the United States Constitution is inaccurate and contravenes Mississippi precedent.

¶20. As we explained in *Grayson v. State*, 806 So. 2d 241, 247 (Miss. 2001), both the Sixth Amendment of the U.S. Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee that the accused shall enjoy the right to have assistance of counsel for his or her defense. Section 26 is congruent with the right to counsel guaranteed by the Fifth and Sixth Amendments, "except for the fact [the right] attaches earlier [under Mississippi law.] *Id*. This exception is not because Section 26 compels so, but because Mississippi Code Section 99-1-7 prescribes it. *Cannaday v. State*, 455 So. 2d 713, 722 (Miss. 1984).

¶21. In *Cannaday*, this Court noted that Mississippi jurisprudence has the same constitutional, statutory provisions, and rules guaranteeing the same rights by the Sixth Amendment. *Id*. Citing *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed 2d 411 (1972), *Cannaday* said: "The time at which the right to counsel attaches to a defendant is when adversary proceedings have been initiated, whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Id*. *Cannaday*, however, distinguished *Kirby* by noting that: "In Mississippi commencement of prosecution is

7

governed by Mississippi Code Section 99-1-7 where prosecution can be commenced by the issuance of a warrant or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit." *Id*. In *Page v. State*, 495 So. 2d 436 (Miss. 1986), Justice Robertson, writing for the Court, referred to this–for the first time–as the "accusatory" stage. *Page* predicated this declaration with the following: "For purposes of our state constitutional right to counsel, we define the advent of the accusatory stage by reference to state law[,] Miss. Code § 99-1-7 . . . ." *Id*. at 439.

¶22.    Then, in *Johnson v. State*, 631 So. 2d 185 (Miss. 1994), the following misstatement was made: "Under the Mississippi Constitution, the right to counsel 'attaches once the proceedings reach the accusatory stage . . . .'" *Id*. (quoting *Williamson v. State*, 512 So. 2d 868, 876 (Miss. 1987).[2] Quoting from *Johnson*, this Court said it again in *Gray v. State*, 728 So. 2d 36, 72-73 (Miss. 1998), and then in *McGilberry v. State*, 741 So. 2d 894, 904 (Miss. 1999).    *Johnson*, *Gray*, and *McGbilberry* erroneously advise that the Mississippi Constitution mandates when the right to counsel attaches.  It does not.  Section 99-1-7 does, as both *Cannaday* and *Page* instruct.

¶23.    When–or at what stage–the right to counsel attaches is not at issue here.  Rather, it is the rule created by the United States Supreme Court in *Edwards v. Arizona*, 451 U.S. 477, 484-85, 1015 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), holding that "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further

---

[2] *Williams* correctly stated that "One's right to counsel under Mississippi law attaches earlier in the day than does the federal right.  *Williams*, 512 So. 2d at 876 (citing *Page v. State*, 495 So. 2d 436, 439 (Miss. 1986).

interrogation by the authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police." "[T]he *Edwards* rule is not a constitutional mandate, but judicially prescribed prophylaxis." *Maryland v. Shatzer*, 559 U.S. 98, 105, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010). And its application "is justified only by reference to its prophylactic purpose." *Id*. at 106. Its purpose is designed "to protect an accused in police custody from badgering or overreaching . . . that might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel assistance." *Smith v. Illinois*, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983)).

¶24.     As explained in *Holland v. State*, 587 So. 2d 848, 856 (Miss. 1991), "[t]he right to have an attorney present must be 'specifically invoked.'" (quoting *Edwards*, 451 U.S. at 482). A problem arises, however, when there are ambiguous or equivocal statements or utterances of the right to counsel. *Holland* noted that "precedents do not establish a bright-line rule for determining whether an utterance is ambiguous, and the United States Supreme Court has twice expressly declined to address the issue." *Id*.

¶25.     *Holland* then surveyed federal caselaw and set forth the following three-part test for determining whether the trial court should have suppressed a criminal defendant's given statement or confession after an *Edwards* violation purportedly occurred: 1) was the statement ambiguous; 2) if so, was the subsequent scope of interrogation limited to clarifying

the ambiguous statement; and 3) if the interrogation continued without counsel, was there a valid *Miranda* waiver. *Id*. at 855-59.

¶26.    Almost three years after *Holland* was decided, the Supreme Court spoke to the matter in *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). There, the Court found that a suspect's remark to law enforcement–"Maybe I should talk to a lawyer"–was not a request for counsel. *Davis* explained:

> The right to counsel recognized in *Miranda* is sufficiently important to suspects in criminal investigations, and it requires the special protection of the knowing and intelligent waiver standard. *Davis*, 512 U.S. at 458 (quoting *Edwards,* 451 U.S. at 483). . . . The applicability of the " 'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused actually invoked his right to counsel." *Smith v. Illinois*, *supra*, 469 U.S. at 95, 105 S.Ct. at 492 (emphasis added), quoting *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L. Ed. 2d 197 (1979). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. . . . Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. at 178, 111 S. Ct. at 2209. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. See [*id*]. ("[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards*."); *Edwards v. Arizona*, *supra*, 451 U.S. at 485, 101 S. Ct. at 1885 (impermissible for authorities "to reinterrogate an accused in custody if he has clearly asserted his right to counsel") (emphasis added).
>
> . . . . The rationale underlying *Edwards* is that the police must respect a suspect's wishes regarding his right to have an attorney present during custodial interrogation. But when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity," *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975), because it would needlessly prevent the police

10

from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present. Nothing in *Edwards* requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer. In *Miranda* itself, we expressly rejected the suggestion "that each police station must have a 'station house lawyer' present at all times to advise prisoners," 384 U.S. at 474, 86 S. Ct. at 1628, and held instead that a suspect must be told of his right to have an attorney present and that he may not be questioned after invoking his right to counsel. We also noted that if a suspect is "indecisive in his request for counsel," the officers need not always cease questioning. *See id*. at 485, 86 S. Ct. at 1633.

*Davis*, 512 U.S. at 458-59.

¶27.  *Davis* concluded with the following:

We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who—because of fear, intimidation, lack of linguistic skills, or a variety of other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present. **But the primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves. "[F]ull comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process."** *Moran v. Burbine*, *supra*, 475 U.S. at 427, 106 S. Ct. at 1144. A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although *Edwards* provides an additional protection—if a suspect subsequently requests an attorney, questioning must cease—it is one that must be affirmatively invoked by the suspect.

. . . .

Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. That was the procedure followed by the NIS agents in this case. Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or

11

unequivocal request for counsel, the officers have no obligation to stop questioning him.

> To recapitulate: We held in **Miranda** that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in **Edwards** that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

**Davis**, 512 U.S. at 460-62.

¶28. In **Grayson**, this Court recognized **Davis** and said that "an ambiguous mention of possibly speaking with one's attorney is insufficient to trigger the right to counsel." **Grayson**, 806 So. 2d at 247 (citing **Davis**, 512 U.S. at 459).

¶29. In **Barnes**, we quoted extensively from **Davis**, in addressing whether the defendant's statements, "So, I don't need legal, okay"; "But I don't have an attorney here"; and "Now, if I do need to get a lawyer . . . I will get one", constituted an assertion of the right to counsel during police interrogation. In finding that the **Edwards** rule was not violated, we held the following:

> We find that the record supports a finding that Barnes received the **Miranda** warning, that she knowingly and intelligently waived their rights, and that she freely and voluntarily made the statements. Pursuant to **Davis**, Barnes failed to make an unambiguous, unequivocal request for an attorney, and [law enforcement] had no obligation to stop questioning her.

**Barnes**, 30 So. 3d at 318 (citing **Davis**, 512 U.S. 452). **Barnes** was a unanimous decision.

¶30. In **Downey v. State**, 144 So. 3d 146 (Miss. 2014), this Court, in a five-to-four decision, ostensibly dismissed the **Davis** Court's holding that "a suspect 'must

12

unambiguously request counsel,' and that law enforcement officers are not required to cease questioning based on an ambiguous request for counsel." *Downey*, 144 So. 3d at 151 (quoting *Davis*, 512 U.S. at 459). The *Downey* majority said that "[t]he three-part test established in *Holland* adequately guards the right to counsel for custodial suspects who may not know that the right to counsel must be unambiguously asserted . . . ." *Downey* then applied the three-part test prescribed by *Holland* and found that officers' statements after the suspect stated that she had an attorney and could use him, exceeded permissible scope of her ambiguous invocation of right of counsel. *Id*. at 152. The *Downey* majority further found that the suspect's *Miranda* waiver was not knowing, voluntary, and intelligent. *Id*. at 153.

¶31.   *Downey* is uncertain in these respects. First, even though *Downey* cited *Grayson* and *Barnes*'s, *Downey* made no mention of their accordance with *Davis*–in particular, *Barnes*'s recognition and application of the objective standard instructed by *Davis*. Second, *Downey* could be read as finding a direct *Edward*'s violation–regardless of either *Davis* or *Holland*. The *Downey* majority, based on its review of the record, concluded that:

> Nancy Downey requested counsel. First, she stated that she had an attorney. Then, she said that she could use him. Despite these explicit statements, the officer crossed the line of clarifying whom Downey had requested as counsel by indicating some unspecified difficulty of procuring the lawyer's presence expeditiously. All of this occurred after the officer had injected the alluring bait of bail into his conversation.

*Id*. at 153. Even though four dissenting members of this Court in *Downey* did not conclude that Downey explicitly requested counsel, it is nonetheless arguable that Downey's statement met the level of clarity required by *Edwards*. Therefore, neither *Davis* nor *Holland* was applicable.

¶32.    Lastly, what must be gleaned from *Davis* is that *Davis*'s instruction that law enforcement officers may continue questioning a suspect until and unless the suspect clearly requests an attorney, is realized on the understanding that "the primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves." *Davis*, 512 U.S. at 460.  This clearly adjoins with the third prong related in *Holland*: if interrogation continued without counsel, was there a valid *Miranda* waiver?  *Holland*, 587 So. 2d at 859.

¶33.    Whether a suspect has "intelligently, knowingly and voluntarily" waived his or her *Miranda* rights is a factual question that must be determined by the trial judge from the totality of the circumstances. *Neal v. State*, 451 So. 2d 743, 753 (Miss. 1984).  The totality-of-circumstances test has no role in the determination of whether an accused's request for counsel is clear or equivocal.  *Holland*, 587 So. 2d at 856 (citing *Robinson v. Borg*, 918 F.2d 1387, 1391 n.4 (9th Cir. 1990).  A statement is either an unambiguous assertion of the right to counsel or it is not.  *Davis*, 512 U.S. at 459.   But, with regard to the actual validity of a suspect's waiver  of the *Miranda* rights, a defendant may always challenge the validity of the waiver, and the State then bears the burden of proving the waiver.  *Neal v. State*, 451 So. 2d at 753. Review should focus on the "particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Holland*, 587 So. 2d at 860 (quoting *Edwards*, 451 U.S. at 482).  Concern, according to *Davis*, that some suspects who "because of fear, intimidation, lack of linguistic skills, . . .will not clearly articulate their right to counsel although they actually want to have a lawyer present[,]" is abated by what is required in demonstrating a valid *Miranda* waiver.  *Davis*, 512 U.S. at 460.

¶34.   *Davis* carefully reiterated that, if a suspect effectively waives his or her right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him or her.  *Davis*, 512 U.S. at 458 (citing *North Carolina v. Butler*, 441 U.S. 369, 372-76, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)).  But if a suspect affirmatively requests counsel at any time during the interview, he or she is not subject to further questioning until a lawyer is made available or the suspect reinitiates conversation.  *Id*. (citing *Edwards*, 451 U.S. at 484-85).  As mentioned, this "second layer of prophylaxis for the *Miranda* right to counsel" is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights[.]"  *Id*. (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991), and *Michigan v. Harvey*, 494 U.S. 344, 350, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990)).  "But if a suspect makes reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."  *Davis*, 512 U.S.at 459.  "The likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards*."  *Id*. (quoting *McNeil*, 501 U.S. at 178).

¶35.   *Davis* strikes a balance between the *Miranda* "procedural safeguards," that are "not themselves rights protected by the Constitution" but measures "to insure the right against self-incrimination [is] protected," and society's interest for effective law enforcement. *Davis*,  512 U.S. at 457-61.  *Davis* explained:

> In considering how a suspect must invoke the right to counsel, we must
> consider the other side of the *Miranda* equation: the need for effective law

15

enforcement. Although the courts ensure compliance with the *Miranda* requirements through the exclusionary rule, it is police officers who must actually decide whether or not they can question a suspect. The *Edwards* rule—questioning must cease if the suspect asks for a lawyer—provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.

*Id*. at 461.

¶36. This Court may institute whatever rules and procedural safeguards it deems necessary to ensure the rights guaranteed by the Mississippi Constitution are secured. But we must be careful and circumspect in doing so, as we may neither enlarge nor modify these rights. We must also be accurate when construing or speaking to our constitutional provisions, as the misstatements in *Johnson*, *Gray*, and *McGilberry* illustrate.

¶37. Never has this Court held that the Mississippi Constitution provides greater protection than the U.S. Constitution to criminal suspects who invoke the right of counsel during custodial interrogations. Indeed, have we consistently used federal cases as guidance with regard to the *Edwards* rule. *See Holland*, (relying on the Eleventh Circuit) and *Barnes* (relying on the Supreme Court).

**CONCLUSION**

¶38. We affirm the Scott County Circuit Court's judgment of conviction and sentence.

16

¶39. **CONVICTION OF ARSON AND SENTENCE OF EIGHTEEN (18) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $1,500, RESTITUTION TO THE OWNERS OF THE DWELLING HOUSE IN THE AMOUNT OF $10,000, AND RESTITUTION TO THE VICTIM IN THE AMOUNT OF $3,000. THE FINE, RESTITUTION TO THE OWNERS OF THE DWELLING HOUSE, AND RESTITUTION TO THE VICTIM SHALL BE MADE IN MONTHLY INSTALLMENTS, TO THE CIRCUIT CLERK OF SCOTT COUNTY, MISSISSIPPI, IN THE AMOUNT OF $150 WITH THE FIRST PAYMENT DUE NINETY (90) DAYS FOLLOWING RELEASE. APPELLANT SHALL BE GIVEN CREDIT FOR THIRTEEN (13) DAYS OF JAIL TIME SERVED.**

**WALLER, C.J., RANDOLPH, P.J., AND CHANDLER, J., CONCUR. LAMAR AND COLEMAN, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶40. Because the Mississippi Constitution provides greater protection to criminal suspects' invocation of counsel during interrogations than does the United States Constitution and because the plurality attempts to undermine the sound constitutional analysis of ***Downey v. State***, 144 So. 3d 146 (Miss. 2014), and ***Holland v. State***, 587 So. 2d 848 (Miss. 1991), I decline to endorse the plurality's logic, which relies upon incorrect statements of Mississippi law and inapplicable federal precedents. Instead, I respectfully provide the correct analysis of Franklin's invocation of counsel under the Mississippi Constitution and this Court's precedent in ***Downey*** and ***Holland***.

¶41. During the suppression hearing, the trial court questioned Inspector Tom Rigby, the law enforcement officer who had interrogated Franklin. Rigby provided the following information regarding Franklin's claimed invocation of counsel:

17

Q. At what point in time of the interview was it that he said that he needed some help?

A. It was, to the best of my knowledge, Your Honor, it was closer to the end.

Q. Close to the end?

A. Yes, sir.

Q. Now, the *Miranda* warning, the waiver of the rights – well, the *Miranda* warning was that he had the right to have an attorney.

A. Yes, sir.

Q. Did you advise him of that?

A. Yes, sir, I did.

Q. And did he respond to that when you told him that?

A. He understood it, Your Honor . . . .

Q. Now, when you advised him of his right to have an attorney, was that before he said he needed some help?

A. Yes, sir, yes, sir, it was.

Q. It was before that?

A. Uh-huh. Yes, sir.

Q. It was after you told him that he could have an attorney, he said he needed some help?

A. Yes, sir.

Q. Now, Mr. Rigby, tell me, was he asking for an attorney when he said he needed some help?

A. No, sir, Your Honor, I didn't take it that he was asking for an attorney. It was something to his condition.

Q. Did he ever again at any time say he wanted an attorney?

A. No, sir, to the best of my knowledge, he did not.

¶42.   It is undisputed that invocations of the right to counsel during the course of police interrogation fall under Fifth Amendment-related jurisprudence. *Davis v. United States*, 512 U.S. 452, 456-57, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994).  Under rights attendant to the Fifth Amendment's right against self-incrimination, if a person under arrest invokes his right to counsel during the course of interrogation, interrogation must cease until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1880, 68 L. Ed. 2d 378, 386 (1981).  The right to have an attorney present must be "specifically invoked." *Edwards*, 451 U.S. at 482.

¶43.   In *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the United States Supreme Court held that "the suspect must *unambiguously* request counsel." *Id.* at 459 (emphasis added).  Thus, the accused's Fifth Amendment-related rights do not "require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney." *Id.*

¶44.   But, just as a right against self-incrimination is articulated in the Fifth Amendment to the United States Constitution, U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself"), a similar right against self-incrimination exists in Article 3, Section 26, of the Mississippi Constitution.  Miss. Const. art. 3, § 26 ("[The accused] shall not be compelled to give evidence against himself.").

19

¶45.    In ***Downey v. State***, 144 So. 3d 146 (Miss. 2014), an intellectually disabled and functionally illiterate woman was arrested and taken into custody for burglary of a dwelling. ***Id.*** at 149.    The arresting officer read Downey her ***Miranda***[3] rights and the following exchange occurred:

> **Officer**: Now we are going to talk for a just a little bit, ok, and then I'm gonna try and get you a bond set, stuff like that or whatever we need to do so we can get you on out of this jail, ok? (Officer points out ***Miranda*** rights on paper, and reads them aloud.) You haven't been promised or threatened anything, have you? Nobody's treated you bad or anything? They treated you good at the jail last night?
>
> **Downey**: Yeah, but I didn't sleep last night.
>
> **Officer**: Nancy can you put your signature right there for me in those two spots?
>
> **Downey**: (signs the paper) I got a lawyer.
>
> **Officer**: Do what?
>
> **Downey**: I got a lawyer.
>
> **Officer**: Who is that?
>
> **Downey**: Brad Sullivan.
>
> **Officer**: Brad who?
>
> **Downey**: Brad Sullivan. He works at Trustmark Bank.
>
> **Officer**: Do you want to talk to me or do you want to use him? I've got to know that okay?
>
> **Downey**: I could use him.

---

[3]***Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

**Officer**: Is he a tall guy? Real tall young man? I know a Brad, but I don't think he is a Sullivan. But he works there at the bank. He works for Sullivan and Sullivan? Brad Thompson?

**Downey**: Yeah.

**Officer**: How does he represent you?

**Downey**: He did me . . . when we had a wreck.

**Officer**: That's fine, Nancy, but what I need to know is do you want to talk to me now. . . . I mean I don't know if I can get him over here right this minute. Do you want to talk with me now, without him, or do you want to wait for him?

**Downey**: I'll talk with you.

*Id.* at 149-50. At issue in *Downey* was whether the suspect's saying "I got a lawyer" and "I could use him" invoked her right to remain silent until an attorney was present. *Id.* at 152. The plurality opines that "it is . . . arguable that Downey's statement met the requisite level of clarity required by *Edwards*. Therefore, neither *Davis* nor [sic] *Holland* was applicable." (Pl. Op. at ¶31). At the time this Court decided *Downey*, both the majority and the dissent — having been joined by Justice Pierce — agreed that Downey's statements were insufficient to invoke her right to counsel under federal law. *See Downey*, 144 So. 3d (applying a test used to specifically to identify "ambiguous" invocations of counsel); *id.* at 154 (Coleman, J., dissenting). More specifically, the dissent averred that "[l]ike the Supreme Court of the United States in *Davis*, we too should decline to 'require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney.' In the case *sub judice*, the defendant made ambiguous statements regarding counsel, and the officer asked questions to clarify the ambiguity." *Id.* at 154

21

(Coleman, J., dissenting) (quoting *Davis*, 512 U.S. at 459). Thus, at the time *Downey* was decided, it was undisputed by anyone on this Court that Downey's invocation of counsel failed to meet the standard articulated by the United States Supreme Court in *Davis*, that an invocation of counsel must be "unambiguous." *Davis*, 512 U.S. at 459.

¶46. However, the majority of this Court in *Downey* declined to be constrained by the federal standard articulated in *Davis*, upon which today's plurality relies extensively. (Pl. Op. ¶¶ 26-27; 35-36) (block-quoting the precedent in *Davis*). We held that "*Davis* does not require Mississippi to follow the minimum standard that the federal government has set for itself. We are empowered by our state constitution to exceed federal minimum standards of constitutionality and more strictly enforce the right to counsel during custodial interrogations." *Id.* at 151; *compare with* (Pl. Op. at ¶ 37) ("Never has this Court held that the Mississippi Constitution provides greater protection than the federal constitution to criminal suspects who invoke the right of counsel during custodial interrogations."). The Mississippi Constitution protects the invocation of the right to counsel during the course of interrogation, whether the criminal suspect's invocation is ambiguous or unambiguous. *Id.* We explicitly declined to adopt the test of whether an invocation of counsel was "unambiguous" in accordance with *Davis*, holding instead that "[t]he three-part test established in *Holland* adequately guards the right to counsel for custodial suspects who may not know that the right to counsel must be unambiguously asserted, or that the right exists regardless of the amount of time it might take to obtain counsel." *Id.* at 151. In other words, in Mississippi, suspects who "because of fear, intimidation, lack of linguistic skills, or a

22

variety of other reasons . . . will not [unambiguously] articulate their right to counsel although they actually want to have a lawyer present" nevertheless enjoy constitutional protection. *Davis*, 512 U.S. at 460.

¶47. This Court therefore endorsed a three-part test to determine whether a trial court erred in failing to suppress a criminal defendant's confession or statement taken after his or her invocation of the right to counsel during the course of custodial interrogation: (1) whether counsel was requested; (2) if the request for counsel was ambiguous, whether the appropriate questions to identify the counsel requested were asked; and (3) if the interrogation continued without counsel, whether there was a valid *Miranda* waiver. *Downey*, 144 So. 3d at 150-53; *see Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶48. The plurality opines that the *Holland* test results in a legal nullity, because the third prong requires that there be a valid *Miranda* waiver, a universal prerequisite for a valid custodial interrogation. (Pl. Op. ¶31) ("[W]hat must be gleaned from *Davis* is that *Davis*'s instruction that law enforcement officers may continue questioning a suspect until and unless the suspect clearly requests an attorney, is realized on the understanding that 'the primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves'. This clearly adjoins with the third prong related in *Holland*: if interrogation continued without counsel, was there a valid *Miranda* waiver?") (internal quotations omitted). This criticism of *Holland* belies logic and strains credulity. The third prong of the *Holland* test does not address the initial waiver of rights under *Miranda*. Instead, it addresses any and all statements given to police after the suspect's invocation of a right to

23

counsel. *Holland*, 587 So.2d at 860.  As the plurality concedes (Pl. Op. ¶31), the United States Supreme Court has held

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards*, 451 U.S. at 482.  In light of federal precedent requiring that the government show a "valid waiver" to continue questioning after an accused has invoked his right to counsel (or, as is more commonly known, one of his *Miranda* rights), why then would Mississippi law, specifically discussing invocations of a right to counsel during police questioning, look to the original *Miranda* waiver, read at the beginning of the interrogation, and not to the required subsequent waiver of his specifically invoked *Miranda* rights?  For example, the majority in *Downey* specifically quoted this exchange:

> **Officer**: That's fine, Nancy, but what I need to know is do you want to talk to me now. . . . I mean I don't know if I can get him over here right this minute. Do you want to talk with me now, without him, or do you want to wait for him?
>
> **Downey**: I'll talk with you.

*Downey*, 144 So. 3d at 150.  The fact is that the analysis for a valid waiver of *Miranda* rights prior to interrogation and a valid waiver of rights after they have been invoked during the course of interrogation closely resemble each other.  This is because both analyses focus on competency and voluntariness.  However, to suggest, as the plurality does, that *Holland* has

24

been subsumed into federal case law because it merely looks to the voluntariness of the original *Miranda* waiver is inaccurate.

¶49. Turning to the analysis that this Court articulated in *Downey* and *Holland*, in order for us to decide whether Franklin's rights were violated, we first must determine whether Franklin invoked his right to counsel. Unambiguous invocations of one's right to counsel are readily identifiable and usually involve a suspect's saying "I want a lawyer." *See Downey*, 144 So. 3d at 151; *accord Smith v. Illinois*, 469 U.S. 91, 105 S. Ct. 490, 493, 83 L. Ed. 2d 488 (1984) (per curiam) ("[A] statement either is such an assertion of the right to counsel or it is not."). Equivocal or ambiguous requests for counsel require more consideration because there is no bright-line rule about what types of statements constitute equivocal requests for counsel. *Holland*, 587 So. 2d at 856-57. Moreover, a request for counsel can occur any time during the interrogation. *Id.* But "[a] defendant must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Barnes v. State*, 30 So. 3d 313, 317 (Miss. 2010). Accordingly, in *Holland*, this Court held that a suspect asking detectives "Don't you think I need a lawyer?" invoked his right to counsel. *Holland*, 587 So. 2d at 856-57. Similarly, in *Downey*, this Court determined that a suspect's statements that she "had an attorney" and "I could use him" were sufficient to invoke her right to counsel. *Downey*, 144 So. 3d at 151-52. Now we must determine whether Franklin articulated "his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Barnes*, 30 So. 3d at 317.

25

In the context of this particular interrogation, Franklin's request for "help" was insufficient to invoke counsel. A request for "help," in the middle of the interrogation, could constitute a call for any number of different types of aid, including medical, legal, or spiritual assistance. It was not reasonable in this instance for Franklin to expect Inspector Rigby to discern that the particular sort of help he wanted was that which could be provided by a lawyer.

¶50.   The plurality bemoans that we must be careful in not modifying the rights secured by the Mississippi Constitution. (Pl. Op. ¶ 36). The plurality also cautions that "[w]e must . . . be accurate when construing or speaking to our constitutional provisions." (Pl. Op. ¶36). Yet the plurality misapplies and misstates a constitutional test articulated by a sound majority of this Court in two of our prior decisions: **_Holland_** and **_Downey_**. With respect to the plurality's gross misapplication of the Mississippi Constitution, **_Downey_**, and **_Holland_**, I respectfully dissent. To the extent that the plurality opinion inadvertently reaches the right result under Mississippi law, I concur in that result.

**DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**