BARNES, J.,
for the Court:
¶ 1. On July 22, 2009, the Jones County Sheriffs Department arrived at a house fire to find the home fully engulfed. Witnesses stated that before the fire, they had seen Nancy Downey walking away from the home and carrying a large, full bag. Deputy James Atkins went to the nearby home of Marvin Pruitt, Downey’s brother, to investigate. Downey and another woman answered the door. Downey lied to the deputy, claiming the other woman was Downey and that she did not start the fire, even though the deputy had not even questioned her about the fire at that point. However, the deputy knew Downey from a previous occasion and knew that she was lying.
¶2. Downey then admitted to being in the home earlier that evening, and a bag of stolen items from the burned home was recovered from under a bed in Pruitt’s home. Downey was arrested and read her Miranda[1] rights. After signing a waiver of those rights, Downey told the investigator that she had an attorney and stated, “I could use him.” It was not clear to the interrogating officer to whom Downey was referring. When questioned further about her need for an attorney, she agreed to go ahead and talk to law enforcement without an attorney present. Downey admitted that she had been looking around the home and smoking a cigarette. She said the cigarette fell and caught some clothes on fire.
¶ 3. On November 2, 2009, Downey was indicted for Count I, burglary of a dwelling, and Count II, first-degree arson. After a psychiatric evaluation was conducted on Downey, she was found competent to stand trial. However, the report also stated that Downey was “intellectually disabled and functionally illiterate.”
¶ 4. Downey was convicted of both counts and sentenced to serve twelve years on each count in the custody of the Mississippi Department of Corrections, with the sentences to run concurrently. Downey’s motion for a judgment notwithstanding the verdict, or alternatively a new trial, was denied.[2] On appeal, we find no error and affirm the judgment.
DISCUSSION
Whether the trial court erred in denying the motion to suppress Downey’s statement to law enforcement.
A. Standard of Review
¶ 5. Prior to trial, Downey filed a motion to suppress her statement to law enforce *172 ment. After a hearing, the trial court denied the motion and allowed the introduction of her statement into evidence. She argues on appeal that the statement should have been ruled inadmissible.
¶ 6. A statement by a defendant is admissible if the defendant was given a Miranda warning, and then knowingly, intelligently, and voluntarily waived his rights. Brown v. State, 936 So.2d 447, 451 (¶ 6) (Miss.Ct.App.2006) (citing Busick v. State, 906 So.2d 846, 855 (¶ 16) (Miss.Ct. App.2005)). “[T]he standard of review for a trial court’s decision to admit or exclude evidence is abuse of discretion.” Id. (citing Graves v. State, 492 So.2d 562, 565 (Miss.1986)).
B. Right to Counsel
¶ 7. Downey argues that she invoked her right to counsel during police questioning; yet, law enforcement continued to interrogate her in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial judge, in denying the motion, found: “I’m totally satisfied that [Downey] gave permission to be asked questions and questions that flowed therefrom unless or until she invoked her right once again not to talk and see her lawyer.”
¶ 8. Citing the United States Supreme Court’s holding in Miranda, the Mississippi Supreme Court has stated:
If the defendant invokes his right to counsel, the interrogation must cease until an attorney is present. If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.
Barnes v. State, 30 So.3d 313, 316 (¶ 8) (Miss.2010) (internal citations and quotations omitted) (citing Miranda, 384 U.S. at 475, 479, 86 S.Ct. 1602)). “Once a defendant asks for counsel, he cannot be interrogated further until counsel has been made available, ‘unless the accused himself initiates further communication, exchanges, or conversations with the police.’” Id. at 316-17 (¶8) (quoting Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).
 ¶ 9. However, in Davis v. United States, 512 U.S. 452, 459, 462, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the United States Supreme Court clarified:
[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.... Rather, the suspect must unambiguously request counsel. As we have observed, a statement either is such an assertion of the right to counsel or it is not.... [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.
[W]e are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.
(Internal citations and quotations omitted) (emphasis in original). During questioning, Downey stated that she had an attorney, and later said, “I could use him.” During the hearing on the motion to suppress, Major Robbie Súber, the officer who ques *173 tioned Downey, testified that upon learning Downey had an attorney, he questioned her further regarding whether she desired to consult with the attorney.
Q. I know some of these questions the transcript speaks for itself, but after you read the rights and waiver of rights, that’s when she stated, I got a lawyer?
A. Correct.
Q. Who do you recall her saying was that lawyer?
A. Brad Sullivan.
Q. Were you familiar with a Brad Sullivan?
A. I was not.
Q. Was there reason for you, as it seemed in the transcript, for you to be confused about the name Brad Sullivan?
A. Correct.
Q. Why was that?
A. Well, I knew a Brad and knew the Sullivans were involved in law practice here in Laurel, and I just don’t know who she was talking about.
Q. So what were you trying to do there when you were asking her these questions as to who Brad Sullivan is?
A. Trying to narrow down who she may be talking about as far as who her attorney [was], who she had used in the past, whoever she was referring to.
Major Súber determined that Downey was referring to Brad Thompson, a lawyer she had employed previously in a car-accident case. Once he determined the identity of the attorney to whom Downey was referring, Major Súber asked if she wanted him to go get Thompson or if she wanted to talk to Major Súber.
Q. And then you asked her, do you want me to go get him or do you want to talk to me?
A. I did.
Q. What did she say?
A. She eventually said that I want to talk to you.
Q. Again, the purpose of the questions you asked her after she said to you I got a lawyer was for what purpose?
A. To try and figure out who she was talking about, what attorney she was talking about.
¶ 10. Nothing in the record suggests Downey made a clear and unequivocal request for an attorney. Furthermore, Downey told Major Súber that she would go ahead and talk with him and not wait to call Thompson. We cannot find that the trial judge erred in finding that Downey voluntarily agreed to talk with Major Sú-ber without the presence of an attorney.
C. Voluntariness of Waiver of Miranda Rights
¶ 11. Downey claims that her lack of sleep the night before while in custody, combined with her low intelligent quotient (IQ) and deficient verbal skills, prevented her from voluntarily waiving her Miranda rights. Downey notes that she has an IQ of 68. The evaluation by the trial court’s psychologist found Downey to be “intellectually disabled and functionally illiterate.” Therefore, she claims that “[n]o reading of the record or viewing of the interrogation can support an argument that [she] read and understood the waiver that she signed.”
¶ 12. The Mississippi Supreme Court has often upheld a trial court’s finding that a mentally impaired defendant knowingly, intelligently, and voluntarily waived his Miranda rights. In Neal v. *174 State, 451 So.2d 743, 756 (Miss.1984), the supreme court found that a defendant with an IQ of 54 and organic brain dysfunction lawfully waived his Miranda rights. In a more recent case, Brown v. State, 936 So.2d 447, 451-52 (¶¶ 8-10) (Miss.Ct.App. 2006), this Court held that the trial court’s denial of a defendant’s motion to suppress his statement to police was not an abuse of discretion, despite the fact that the defendant had a “verbal IQ of 66 ... and a full scale IQ of 64.” “The mental ability of the defendant is but one factor for the trial court to consider when determining whether a defendant’s statement is admissible.” Id. at 452 (¶ 10). The trial court in Brown observed that while giving his statement to police, the defendant appeared lucid and communicated appropriately, with no signs of diminished capacity. Id. at 451-52 (¶ 9); see also Veal v. State, 585 So.2d 693, 697 (Miss.1991) (mentally retarded defendant who could read and write and appeared to have understood the process held to have voluntarily, intelligently, and knowingly waived Miranda rights); Smith v. State, 534 So.2d 194, 196-97 (Miss.1988) (defendant with an IQ of 65 who was unable to read, could not recognize the word “waiver,” could not understand multi-syllabic words, and had only the minimal skills necessary for daily functioning, was found to have knowingly waived his Miranda rights).
¶ 13. According to Major Súber, Downey indicated that she could read and write “a little bit.” The video of the interview indicates that she knew her address, Social Security number, and date of birth. Major Súber thoroughly read the waiver of rights to Downey, and she acknowledged that' she had not been threatened or coerced into signing the waiver. Furthermore, Dr. Criss Lott opined in his evaluation that “to a reasonable degree of psychological certainty, ... Mrs. Downey had the capacity to understand and to knowingly, intelligently, and voluntarily waive or assert her [constitutional rights.”
¶ 14. Accordingly, we find the record supports that Downey gave a knowing, intelligent, and voluntary waiver of her Miranda rights.
CONCLUSION
¶ 15. “A trial judge must ‘determine whether the accused, prior to the confession, understood (a) the content and substance of the Miranda warnings and (b) the nature of the charges of which he was accused.’ ” Johnson v. State, 760 So.2d 33, 37 (¶ 13) (Miss.Ct.App.2000) (citation omitted). Based on a review of the evidence, we find the trial court properly evaluated the voluntariness of the confession, and its decision to deny the motion to suppress was not an abuse of discretion.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING,, AND COUNT II, ARSON, AND SENTENCES OF TWELVE YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The trial court’s order denying the motion was entered on March 29, 2012. Although the notice of appeal was not filed until May 21, 2012, the trial court entered an order reopening the time for appeal, as the defendant was not given timely notice of the March 29, 2012 order. See M.R.A.P. 4(h).