*149
ON WRIT OF CERTIORARI

KITCHENS, Justice,
for the Court:
¶ 1. Nancy Downey was convicted of burglary of a dwelling and first-degree arson by a jury in the Circuit Court of the Second Judicial District of Jones County and was given two concurrent twelve-year sentences. Following the denial of Dow-ney’s motion for judgment notwithstanding the verdict or for a new trial, she appealed. The Court of Appeals affirmed her convictions and sentences. In her petition for writ of certiorari, Downey argues that the trial court erred by failing to suppress her statement to law enforcement officers after she had invoked her Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "' Finding that Downey’s constitutional rights were violated, we reverse her convictions and sentences and remand this case for a new trial.

FACTS AND PROCEDURAL HISTORY

On July 22, 2009, the Jones County Sheriffs Department arrived at a house fire to find the home fully engulfed. Witnesses stated that before the fire, they had seen Nancy Downey walking away from the home and carrying a large, full bag. Deputy James Atkins went to the nearby home of Marvin Pruitt, Downey’s brother, to investigate. Downey and another woman answered the door. Downey lied to the deputy, claiming the other woman was Downey and that she did not start the fire, even though the deputy had not even questioned her about the fire at that point. However, the deputy knew Downey from a previous occasion and knew that she was lying.
Downey then admitted to being in the home earlier that evening [smoking a cigarette that fell into some clothes and started a fire]. [A] bag of stolen items from the burned home was recovered from under a bed in Pruitt’s home.
Downey v. State, 144 So.3d 169, 171, 2013 WL 4712724, at *1 (Miss.Ct.App. Sept.3, 2013).
¶ 2. Downey was arrested and interrogated. At the jail, a law enforcement officer removed Downey’s handcuffs in the interrogation room and told her to have a seat in a chair. The officer informed Dow-ney that he was there to ask her some questions and was “going to try to get a bond set” to get her out of jail. The officer then asked Downey whether she could read and write. Downey responded, “A little.” Downey, who was sixty-four years old at the time,. also said that she had not attended high school. The officer read Downey her Miranda rights, and the following exchange occurred:
Officer: Now we are going to talk for a just a little bit, ok, and then I’m gonna try and get you a bond set, stuff like that or whatever we need to do so we can get you on out of this jail, ok? (Officer points, out Miranda rights on paper, and reads them aloud.) You haven’t been promised or threatened any-, thing, have you? Nobody’s treated you bad or anything? They treated you good at the jail last night?
Downey: Yeah, but I didn’t sleep last night.
Officer: Nancy can you put your signature right there for me in those two spots?
Downey: (signs the paper) I got a lawyer.
Officer: Do what?
Downey: I got a lawyer.
Officer: Who is that?
Downey: Brad Sullivan.
Officer: Brad who?
*150 Downey: Brad Sullivan. He works at Trustmark Bank.
Officer: Do you want to talk to me or do you want to use him? I’ve got to know that okay?
Downey: I could use him.
Officer: Is he a tall guy? Real tall young man? I know a Brad, but I don’t think he is a Sullivan. But he works there at the bank. He works for Sullivan and Sullivan? Brad Thompson?
Downey: Yeah.
Officer: How does he represent you?
Downey: He did me ... when we had a wreck.
Officer: That’s fine, Nancy, but what I need to know is do you want to talk to me now.... I mean I don’t know if I can get him over here right this minute. Do you want to talk with me now, without him, or do you want to wait for him?
Downey: I’ll talk with you.
¶ 3. After a psychiatric evaluation, Downey was found “intellectually disabled and functionally illiterate” yet competent to stand trial. At trial, Downey moved to suppress the statement she had made to the law enforcement officer. The trial judge found that Downey had given permission to the officer to continue questioning and denied the motion. Downey’s recorded statements to the officer were played to the jury, including the statement that Downey “was tired of looking at the house because no one was allowed to rent it.”
¶ 4. A jury found Downey guilty of burglary of a dwelling and first-degree arson. She was sentenced to serve two concurrent twelve-year sentences in the custody of the Mississippi Department of Corrections. Downey’s motion for judgment notwithstanding the verdict or for a new trial was denied, and she appealed.
¶ 5. On appeal, Downey argued that she had invoked her right to counsel during police questioning, but the law enforcement officer continued the interrogation in violation of her Miranda rights. The Court of Appeals found no error and affirmed the judgment. Downey raises the same argument in her petition for certiora-ri regarding the alleged violation of her Miranda rights.

STANDARD OF REVIEW

¶ 6. This Court will reverse a trial court’s denial of a motion to suppress if the court’s ruling was a manifest error or contrary to the overwhelming weight of the evidence. Chim v. State, 972 So.2d 601, 607 (Miss.2008) (citations omitted).

DISCUSSION

¶ 7. For this Court to determine whether Downey’s rights were violated, we first must decide whether she affirmatively invoked her right to counsel. Due to the fact-specific nature of requests for counsel and Miranda waivers, the applicable law has become muddled. Accordingly, we review such requests on a case-by-case basis. On the issue of Miranda rights, this Court has held that:
[I]f the defendant invokes h[er] right to counsel, the interrogation must cease until an attorney is present. If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived h[er] privilege against self-incrimination and h[er] right to retained or appointed counsel. Once a defendant asks for counsel, [s]he cannot be interrogated further until counsel has been made available, unless the accused [herself] initiates further communication, ex *151 changes, or conversations with the police.
Barnes v. State, 80 So.3d 813, 316-17 (Miss.2010) (internal quotations and citations omitted). In accordance with this Court’s decision in Barnes, we must determine whether the phrase “I could use him” (referring to Downey’s attorney) invoked Downey’s right to counsel.
¶ 8. When there is ambiguity in the request for counsel, this Court applies a three-step test to determine whether the trial judge correctly decided whether to admit or suppress a defendant’s statements to a law enforcement officer. See Holland v. State, 587 So.2d 848 (Miss. 1991). In applying this test, we consider (1) whether counsel was ambiguously requested; (2) if the request for counsel was ambiguous, whether the appropriate questions to identify the counsel requested were asked; and (3) if the interrogation continued without counsel, whether there was a valid Miranda waiver. Id. at 855-62.
¶9. The dissent argues that the officer’s conduct was appropriate under Holland, and that we should follow the United States Supreme Court decision in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), decided three years after Holland. In Davis, the Court held that a suspect “must unambiguously request counsel[,]” and that law enforcement officers are not required to cease questioning based on an ambiguous request for counsel. Id. at 459, 114 S.Ct. 2350. We disagree. Davis does not require Mississippi to follow the minimum standard that the federal government has set for itself. We are empowered by our state constitution to exceed federal mini-' mum standards of constitutionality and more strictly enforce the right to counsel during custodial interrogations. See Miss. Const, art. 3 § 26; see also Smith v. State, 500 So.2d 973, 979 (Miss.1986) (holding that, while the Brady[1] rule established a “constitutional floor” for determining when nondisclosure of exculpatory evidence necessitated a new trial, this State’s own rules of discovery could require stricter enforcement). Further, as explained below, we do not find that the officer’s conduct was appropriate under Holland. The three-part test established in Holland adequately guards the right to counsel for custodial suspects who may not know that the right to counsel must be unambiguously asserted, or that the right exists regardless of the amount of time it might take to obtain counsel. Accordingly, we continue with our analysis under Holland.
¶ 10. First, we must ascertain whether Downey invoked her right to counsel. Holland, 587 So.2d at 855. The right to counsel may be invoked specifically in any manner and at any stage of the interrogation process. Id. at 857. A defendant is not required to use specific language such as “I want a lawyer,” in order to invoke the right to counsel. Montoya v. Collins, 955 F.2d 279, 283 (5th Cir.1992). Once counsel is requested, the law enforcement officer cannot question the accused about her criminal conduct. Kirkland v. State, 559 So.2d 1046, 1047 (Miss.1990). However, the officer is permitted to inquire about counsel for clarification purposes. Kuykendall v. State, 585 So.2d 773, 777 (Miss.1991). We must give a broad interpretation to the request for counsel. Holland, 587 So.2d at 856.
¶ 11. Here, Downey was in custody and was taken into an interrogation room for questioning. After being read her Miranda rights, Downey stated that she “had an attorney” and referenced him by name. *152 At this point, the officer was permitted to seek clarification concerning the lawyer to whom Downey was referring, which he did. The officer continued to question Downey about the identity of the attorney. The next step of the test is for this Court to make a determination of whether the officer could properly continue the interrogation process.
¶ 12. We must decide whether the officer’s continuing remarks regarding Downey’s lawyer were appropriate. Id. If a defendant ambiguously requests counsel, any subsequent clarifying statements must not “coerce or intimidate the suspect into waiving [her] rights.” Id. at 858. (quoting U.S. v. Fouche, 833 F.2d 1284, 1287 (9th Cir.1987)); see also Owen v. Alabama, 849 F.2d 536, 539 (11th Cir.1988), overruled on other grounds by Ex parte Owen, 586 So.2d 963 (Ala.1991) (“When a defendant makes an equivocal request for an attorney during custodial interrogation, the ‘scope of the interrogation is immediately narrowed to one subject and one only. Further questioning thereafter must be limited to clarifying that request until it is clarified.’ ”) (quoting Thompson v. Wain-wñght, 601 F.2d 768, 771 (5th Cir.1979)); Terry v. LeFevre, 862 F.2d 409, 412 (2d Cir.1988) (“[W]hen a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect’s desire for counsel.”). The interrogator’s line of questioning must not exceed the limits of permissible clarification. Holland, 587 So.2d at 858. Determining the limits of clarification is fact specific. A significant question is whether the interrogator infringed on the defendant’s desire to stop the interrogation. Id.
¶ 13. We find that, when Downey stated that she had an attorney and “could use him,” all interrogation was required to cease except questioning for the purpose of clarifying the request for counsel. Here, the officer represented to Downey that her attorney could not be brought to the jail “right this minute.” The officer’s comments to Downey attempted to link her participation in the interrogation to the process of setting bail and suggested that her talking to the officer was a prerequisite to that process. Further, the standard in providing counsel does not depend on the expediency with which a law enforcement officer may secure counsel for the accused. Any subsequent conversation cannot exceed the bounds of clarifying the accused person’s request. The officer in this case overstepped the limits of proper clarification by emphasizing the amount of time and difficulty that would be involved in obtaining counsel for Downey. Additionally, the officer’s persistence infringed on Downey’s right to cease the interrogation because she expressed no desire to continue speaking to the officer. It was only after the officer told Downey that her attorney could not get there “right this minute” that she acquiesced in talking with the officer. Even then, the officer did not reiterate that Downey had a right for her counsel to be present during the continued conversation. Because we find that, under the facts of this case, Downey invoked her right to counsel and that the officer improperly continued questioning her, we conclude that Downey’s Fifth Amendment rights to án attorney and against self incrimination were violated. Nonetheless, for sake of completeness, we turn to the final step in our analysis.
¶ 14. If interrogation continues outside the presence of the requested counsel, the State bears a heavy burden of proving beyond a reasonable doubt that the defendant validly waived the right to counsel and the privilege against self-in *153 crimination. Id. at 859 (quoting North Carolina v. Butler, 441 U.S. 369, 372-73, 99 S.Ct. 1755,1757, 60 L.Ed.2d 286, 291-92 (1979)). Specifically, the State must show the defendant “voluntarily, knowingly, and intelligently” waived her Miranda rights. Holland, 587 So.2d at 859 (citations omitted). Even where the defendant signed a form waiving her Miranda rights, any statement given to a law enforcement officer may be attacked on the ground that it was involuntary. Grayson v. State, 806 So.2d 241, 248 (Miss.2001). In determining the validity of a Miranda waiver, the trial judge must base his or her finding on appropriate principles of law, supported by substantial evidence. Holland, 587 So.2d at 860. The Court will review the trial judge’s findings upon an independent review of the record. Id.
¶ 15. Based on our review of the record, we find that the State did not satisfy its burden of proving beyond a reasonable doubt that Downey had waived her Miranda rights. The State did not show that Downey knowingly, voluntarily, and intelligently waived her Miranda rights. The State argues that Downey’s request did not adequately request that her attorney be present at the time of questioning. But as the Fifth Circuit Court of Appeals held in Montoya, no magic words are required when invoking the right to counsel. Montoya, 955 F.2d at 283. After reviewing the record, we find that, in this case, Downey requested counsel. First, she stated that she had an attorney. Then, she said that she could use him. Despite these explicit statements, the officer crossed the line of clarifying whom Downey had requested as counsel by indicating some unspecified difficulty of procuring the lawyer’s presence expeditiously. All of this occurred after the officer had injected the alluring bait of bail into his conversation with Downey.[2]
¶ 16. Additionally, we find the denial of Downey’s motion to suppress contrary to the overwhelming weight of the evidence. At no point after requesting counsel did Downey initiate further conversation with the law enforcement officer. See Barnes, 30 So.3d at 316-17. All conversation and questioning was initiated by the officer. In reviewing the transcript from the suppression hearing, the trial judge applied the correct principles of law. His conclusion, however, is unsupported by the evidence. The judge’s decision did not flow logically from the timing and sequence of the request and subsequent interrogation or the content of the questioning. Accordingly, we find that the trial judge abused his discretion in denying Downey’s motion to suppress.

CONCLUSION

¶ 17. Because we find that Downey invoked her right to counsel under the facts of this case, and that her Miranda rights were violated when the interrogating officer continued his questioning without having her attorney present, the trial judge abused his discretion by denying Downey’s motion to suppress and allowing Downey’s recorded statement to be played for the jury. The Court of Appeals incorrectly affirmed the trial court’s conviction. Accordingly, the judgment of the Court of Appeals is reversed and Downey’s conviction in the trial court is reversed, and her case is remanded to the Circuit Court of the Second Judicial District of Jones County for a new trial.
*154 1118. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., CHANDLER AND KING, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., LAMAR AND PIERCE, JJ.

. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. We note that the officer’s conduct as seen in the video does not seem to be overbearing or abusive.