PIERCE, Justice,
for the Court:
¶1. John Lee Franklin was found guilty of arson by a Scott County jury. The Scott County Circuit Court sentenced Franklin to eighteen years in the custody of the Mississippi Department of Corrections and ordered that Franklin pay a $1,500 fine, make restitution to the dwelling house owners in the amount of $10,000 and make restitution to the victim in the amount of $3,000. The court ordered that the fine and restitutions be made in monthly installments of $150, with the first payment due ninety days following Franklin’s release from confinement. Franklin appeals, arguing two issues: (1) the trial court erred in assessing restitution; and (2) the trial court erred in admitting Franklin’s confession into evidence. Finding no merit in either issue, we affirm the trial court judgment.
FACTS
¶ 2. Franklin and his girlfriend, Amanda Ormond, lived together with their children in a house they rented from Eddie and Peggy Johnson located at 328 West Fourth Street in Forest, Mississippi. The couple started having relationship problems, and Franklin began spending several nights sleeping in his car.
¶ 3. One day in September 2012, Amanda drove to Meridian, Mississippi, to pick up her friend, Scott Smith. The two drove back to Amanda’s sister’s house that eve *484 ning. Around 10:45 p.m., Amanda, Scott, and Amanda’s one-year-old son Jacoby, drove back to Amanda’s house on West Fourth Street. When they arrived, Scott put Jacoby to bed and sat down to watch television. Around 1:20 a.m., Amanda left to take her sister’s keys back to her house.
¶ 4. While she was gone, Scott heard banging coming from the back door near the laundry/utility room. When Amanda arrived home minutes later, Scott told her about the noise. Amanda opened the door to the laundry/utility room and saw flames.
¶ 5. Scott ran to get Jacoby, Amanda grabbed her purse, and they all ran out of the house. Amanda called 911. Both Amanda and Scott saw Franklin running from behind the house as they waited for the firemen to arrive.
¶ 6. Deputy Fire Marshall Pete Adcock investigated the fire and determined that it was incendiary. Franklin was arrested and gave a statement to Investigator Tom Rigby of the Forest Police Department, stating as follows:
That Thursday, Amanda told me to leave. I kept walking. I came back around nine o’clock that night to talk to her. When I got to her house, she was gone. I had a key to the car, and then I got in the car and left. She said she was going to give me the car, but [sic] hadn’t put it in my name. I came back around twelve-thirty that night. I heard voices inside her house and saw her in the house with another guy. I then sat down and started to cry and then I heard the van leave. I then lost it and went and got a pair of longjohns and soaked them in gas and then struck the match and lit the longjohns on fire and threw them up into the attic. I — I left after that.
¶ 7. Amanda stated that Franklin called her the day after the fire and “he stated that he had set the house on fire because [she] didn’t want him no more, and that [she] had another man holding his baby.”
¶ 8. Franklin was charged with arson and found guilty. He was sentenced to serve eighteen years in the custody of the MDOC. He also was sentenced to pay a $1,500 fine and to pay a total of $13,000 in restitution upon his release. .This appeal followed. Additional facts, as necessary, will be related in our analysis.
ANALYSIS
I. Whether the trial court erred in ordering Franklin to pay restitution.
¶- 9; Franklin claims the trial court erred in assessing restitution because the trial court did not meet the requirements set forth in Mississippi Code Section 99-37-3 (Rev.2007). The State contends that Franklin waived this issue by not objecting to the order of restitution at sentencing.
¶ 10. We agree with the State. Franklin waived this issue by not objecting to the restitution order at trial. See Harris v. State, 757 So.2d 195, 199 (Miss.2000) (holding that because the defendant did not object to the issue of restitution in the trial court, the issue was barred upon appeal); see also Powell v. State, 536 So.2d 13, 17 (Miss.1988) (same); Watts v. State, 492 So.2d 1281, 1290-91 (Miss.1986) (same).
¶ 11. Procedural bar notwithstanding, this issue is meritless. Section 99-37-3(1) states in part as follows: “When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim....” Miss.Code Ann. § 99-37-3(1). Section 99-37-3(2) requires the trial court to consider the following:
*485 (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;
(b) The ability of the defendant to pay restitution on ah installment basis or on other conditions to be fixed by the court; and •
(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.
¶ 12. According to the record, the trial court heard evidence of the amount of damage caused by Franklin’s crime. The court questioned Franklin as to his ability to pay that amount. Afterward, the trial court ordered that Franklin pay a part of the total claimed and ordered that it be paid in monthly installments, to which Franklin did not object. See Miss.Code Ann. § 99-37-8(3) (“If the defendant objects to the imposition, amount or distribution of the restitution, the court shall, at the time of sentencing, allow him to be heard on such issue.”). For these reasons, we find no error in the trial court’s restitution order.
II. Whether the trial court erred in denying the motion to suppress Franklin’s statement.
¶ 13. Franklin contends that his Miranda[1] waiver and confession were involuntary because during interrogation, Franklin had stated to Investigator Rigby that he needed help. Franklin argues that because Investigator Rigby failed to inquire further what help Franklin needed, the State failed to meet its burden of proof that his confession was voluntary.
¶ 14. For a confession to be admissible, it must have been given voluntarily and not as a result of promises, threats, or inducements. Morgan v. State, 681 So.2d 82, 86 (Miss.1996). Once a defendant alleges that his confession was coerced, he secures a due-process entitlement to a reliable determination that his confession was not given as a result of coercion, inducement, or promises. Id. The State shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary. Id. The State’s burden is met and a priina facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward. Chase v. State, 645 So.2d 829, 838 (Miss.1994). A trial court’s findings of fact on the issue of admissibility of a confession will not be overturned unless it is clearly erroneous or contrary to the overwhelming weight of the evidence. Morgan, 681 So.2d at 87.
¶ 15. During the suppression hearing, Investigator Rigby testified that he read Franklin his Miranda warnings prior to the interview and that Franklin acknowledged he understood them. Franklin signed the waiver. Investigator Rigby testified that no threats were made and no promises were given. Investigator Rigby testified that Franklin never asked for an attorney and never asked that the questioning stop. When asked during cross-examination if Franklin had ever asked for help, Investigator Rigby said Franklin had stated that “he needed some kind of ... health help.” Investigator Rigby testified that he took this to mean that Franklin was talking about his “day to day activities.” Investigator Rigby stated that he did not think Franklin was asking for an attorney. The trial court questioned Investigator Rigby further and asked at what point during the interview Franklin made the statement that he needed help. *486 According to Investigator Rigby, Franklin made the statement toward the end of the interview.
¶ 16. At the conclusion of the suppression hearing, the trial court found that Franklin’s Miranda waiver was knowingly and voluntarily given. No threats or promises were made to Franklin in exchange for his waiver and subsequent confession. The trial court agreed with the State that Franklin was not referring to an attorney when Franklin made the statement that he needed help.
¶ 17. We find no abuse of discretion in the trial court’s ruling. The record supports the finding that Franklin was advised of his Miranda rights, that he knowingly and intelligently waived his rights, and that he freely and voluntarily confessed to setting fire to the house. We also agree with the trial court that Franklin’s statement that he needed “help” was insufficient to invoke his right to counsel. See Barnes v. State, 30 So.3d 313, 317 (Miss.2010) (“A defendant must articulate his desire to have counsel present sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.”). The statement could constitute a request for any number of different types of aid. And it was unreasonable in this instance for Franklin to expect Inspector Rigby to discern what sort of help he wanted.
¶ 18. We find this issue is without merit.
¶ 19. The separate opinion’s contention that the Mississippi Constitution provides greater protection to criminal suspects who invoke the right to counsel during custodial interrogations than does the United States Constitution is inaccurate and contravenes Mississippi precedent.
¶ 20. As we explained in Grayson v. State, 806 So.2d 241, 247 (Miss.2001), both the Sixth Amendment of the U.S. Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee that the accused shall enjoy the right to have assistance of counsel for his or her defense. Section 26 is congruent with the right to counsel guaranteed by the Fifth and Sixth Amendments, “except for the fact [the right] attaches earlier [under Mississippi law.]” Id. This exception is not because Section 26 compels so, but because Mississippi Code Section 99-1-7 prescribes it. Cannaday v. State, 455 So.2d 713, 722 (Miss.1984).
¶ 21. In Cannaday, this Court noted that Mississippi jurisprudence has the same constitutional, statutory provisions, and rules guaranteeing the same rights by the Sixth Amendment. Id. Citing Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), Cannaday said: “The time at which the right to counsel attaches to a defendant is when adversary proceedings have been initiated, whether by way of formal charge, preliminary hearing, indictment, information or arraignment.” Id. Cannaday, however, distinguished Kirby by noting that: “In Mississippi commencement of prosecution is governed by Mississippi Code Section 99-1-7 where prosecution can be commenced by the issuance of a warrant or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit.” Id. In Page v. State, 495 So.2d 436 (Miss.1986), Justice Robertson, writing for the Court, referred to this-for the first time-as the “accusatory” stage. Page predicated this declaration with the following: “For purposes of our state constitutional right to counsel, we define the advent of the accusatory stage by reference to state law[,] Miss. Code § 99-1-7....” Id. at 439.
*487 ¶22. Then, in Johnson v. State, 631 So.2d 185 (Miss.1994), the following misstatement was made: “Under -the Mississippi Constitution, the right to counsel ‘attaches once the proceedings reach the accusatory stage....’” Id. (quoting Williamson v. State, 512 So.2d 868, 876 (Miss.1987)).[2] Quoting from Johnson, this Court said it again in Gray v. State, 728 So.2d 36, 72-73 (Miss.1998), and then in McGilberry v. State, 741 So.2d 894, 904 (Miss.1999). Johnson, Gray, and McGil-berry erroneously advise that the Mississippi Constitution mandates when the right to counsel attaches. It does not. Section 99-1-7 does, as both Cannaday and Page instruct.
¶ 23. When — or at what stage— the right to counsel attaches is not at issue here. Rather, it is the rule created by the United States Supreme Court in Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), holding that “an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police.” “[T]he Edwards rule is not a constitutional mandate, but judicially prescribed prophylaxis.” Maryland v. Shatzer, 559 U.S. 98, 105, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). And its application “is justified only by reference to its prophylactic purpose.” Id. at 106, 130 S.Ct. 1213. Its purpose is designed “to protect an accused in police custody from badgering or overreaching ... that might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel assistance.” Smith v. Illinois, 469 U.S. 91, 98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (quoting Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)).
¶ 24. As explained in Holland v. State, 587 So.2d 848, 856 (Miss.1991), “[t]he right to have an attorney present must be ‘specifically invoked.’ ” (quoting Edwards, 451 U.S. at 482, 101 S.Ct. 1880). A problem arises, however, when there are ambiguous or equivocal statements or utterances of the right to counsel. Holland noted that “precedents do not establish a bright-line rule for determining whether an utterance is ambiguous, and the United States Supreme Court has twice expressly declined to. address the issue.” Id.
¶ 25. Holland then surveyed federal caselaw and set forth the following three-part test for determining whether the trial court should have suppressed a criminal defendant’s given statement or confession after an Edwards violation purportedly occurred: 1) was the statement ambiguous; 2) if so, was the subsequent scope of interrogation limited to clarifying the ambiguous statement; and 3) if the interrogation continued without counsel, was there a valid Miranda waiver. Id. at 855-59.
¶ 26. Almost three years after Holland was decided, the Supreme Court spoke to the matter in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). There, the Court found that a suspect’s remark to law enforcement— “Maybe I should talk to a lawyer” — was not a request for counsel. Davis explained:
The right to counsel recognized in Miranda is sufficiently important to suspects in criminal investigations, and it requires the special protection of the *488 knowing and intelligent waiver standard. Davis, 512 U.S. at 458, 114 S.Ct. 2350 (quoting Edwards, 451 U.S. at 483, 101 S.Ct. 1880)_ The applicability of the “ ‘rigid’ prophylactic rule” of Edwards requires courts to “determine whether the accused actually invoked his right to counsel.” Smith v. Illinois, supra, 469 U.S. at 95, 105 S.Ct. at 492 (emphasis added), quoting Fare v. Michael C., 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry.... Invocation of the Miranda right to counsel “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.” McNeil v. Wisconsin, 501 U.S. at 178, 111 S.Ct. at 2209. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. See [id ]. (“[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards."); Edwards v. Arizona, supra, 451 U.S. at 485, 101 S.Ct. at 1885 (impermissible for authorities “to reinterro-gate an accused in custody if he has clearly asserted his right to counsel”) (emphasis added). .... The rationale underlying Edwards is that the police must respect a suspect’s wishes regarding his right to have an attorney present during custodial interrogation. But when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning “would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity,” Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present. Nothing in Edwards requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer. In Miranda itself, we expressly rejected the suggestion “that each police station must have a ‘station house lawyer’ present at all times to advise prisoners,” 384 U.S. at 474, 86 S.Ct. at 1628, and held instead that a suspect must be told of his right to have an attorney present and that he may not be questioned after invoking his right to counsel. We also noted that if a suspect is “indecisive in his request for counsel,” the officers need not always cease questioning. See id. at 485, 86 S.Ct. at 1633.
Davis, 512 U.S. at 458-59, 114 S.Ct. 2350.
¶ 27. Davis concluded with the following:
We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who — because of fear, intimidation, lack of linguistic skills, or a variety of other reasons — will not clearly articulate their right to counsel although they actually want to have a lawyer present. But the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves. “[Fjull comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process.” Moran v. Burbine, supra, 475 U.S. at 427, 106 S.Ct. at 1144. A suspect who knowingly and voluntarily waives his right to counsel after having *489 that right explained to him has indicated his willingness to deal with the police unassisted. Although Edwards provides an additional protection — if a suspect subsequently requests an attorney, questioning must cease — it is one that must be affirmatively invoked by the suspect.
[[Image here]]
Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. That was the procedure followed by the NIS agents in this case. Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect’s statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect’s statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.
To recapitulate: We held in Miranda that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in Edwards that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.
Davis, 512 U.S. at 460-62, 114 S.Ct. 2350.
¶ 28. In Grayson, this Court recognized Davis and said that “an ambiguous mention of possibly speaking with one’s attorney is insufficient to trigger the right to counsel.” Grayson, 806 So.2d at 247 (citing Davis, 512 U.S. at 459, 114 S.Ct. 2350).
¶ 29. In Barnes, we quoted extensively from Davis, in addressing whether the defendant’s statements, “So, I don’t need legal, okay”; “But I don’t have an attorney here”; and “Now, if I do need to get a lawyer ... I will get one”, constituted an assertion of the right to counsel during police interrogation. In finding that the Edwards rule was not violated, we held the following:
We find that the record supports a finding that Barnes received the Miranda warning, that she knowingly and intelligently waived their rights, and that she freely and voluntarily made the statements. Pursuant • to Davis, Barnes failed to make an unambiguous, unequivocal request for an attorney, and [law enforcement] had no obligation to stop questioning her.
Barnes, 30 So.3d at 318 (citing Davis, 512 U.S. 452, 114 S.Ct. 2350). Barnes was a unanimous decision.
¶ 30. In Downey v. State, 144 So.3d 146 (Miss.2014), this Court, in a five-to-four decision, ostensibly dismissed the Davis Court’s holding that “a suspect ‘must unambiguously request counsel,’ and that law enforcement officers are not required to cease questioning based on an ambiguous request for counsel.” Downey, 144 So.3d at 151 (quoting Davis, 512 U.S. at 459, 114 S.Ct. 2350). The Dovmey majority said that “[t]he three-part test established in Holland adequately guards the right to counsel for custodial suspects who may not know that the right to counsel must be unambiguously asserted.... ” Dovmey then applied the three-part test prescribed by Holland and found that officers’ state- *490 merits after the suspect stated that she had an attorney and could use him, exceeded permissible scope of her ambiguous invocation of right of counsel. Id. at 152. The Dovmey majority further found that the suspect’s Miranda waiver was not knowing, voluntary, and intelligent. Id. at 153.
¶ 31. Dovmey is uncertain in these respects. First, even though Dovmey cited Grayson and Barnes ’s, Downey made no mention of their accordance with Davis— in particular, Bames ⅛ recognition and application of the objective standard instructed by Davis. Second, Dovmey could be read as finding a direct Edwards violation — regardless of either Davis or Holland. The Dovmey majority, based on its review of the record, concluded that:
Nancy Downey requested counsel. First, she stated that she had an attorney. Then, she said that she could use him. Despite these explicit statements, the officer crossed the line of clarifying whom Downey had requested as counsel by indicating some unspecified difficulty of procuring the lawyer’s presence expeditiously. All of this occurred after the officer had injected the alluring bait of bail into his conversation.
Id. at 153. Even though four dissenting members of this Court in Downey did not conclude that Downey explicitly requested counsel, it is nonetheless arguable that Downey’s statement met the level of clarity required by Edwards. Therefore, neither Davis nor Holland was applicable.
¶ 32. Lastly, what must be gleaned from Davis is that Davis’s instruction that law enforcement officers may continue questioning a suspect until and unless the suspect clearly requests an attorney, is realized on the understanding that “the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves.” Davis, 512 U.S. at 460, 114 S.Ct. 2350. This clearly adjoins with the third prong related in Holland: if interrogation continued without counsel, was there a valid Miranda waiver? Holland, 587 So.2d at 859.
¶ 33. Whether a suspect has “intelligently, knowingly and voluntarily” waived his or her Miranda rights is a factual question that must be determined by the trial judge from the totality of the circumstances. Neal v. State, 451 So.2d 743, 753 (Miss.1984). The totality-of-circumstances test has no role in the determination of whether an accused’s request for counsel is clear or equivocal. Holland, 587 So.2d at 856 (citing Robinson v. Borg, 918 F.2d 1387, 1391 n. 4 (9th Cir.1990)). A statement is either an unambiguous assertion of the right to counsel or it is not. Davis, 512 U.S. at 459, 114 S.Ct. 2350. But, with regard to the actual validity of a suspect’s waiver of the Miranda rights, a defendant may always challenge the validity of the waiver, and the State then bears the burden of proving the waiver. Neal v. State, 451 So.2d at 753. Review should focus on the “particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.” Holland, 587 So.2d at 860 (quoting Edwards, 451 U.S. at 482, 101 S.Ct. 1880). Concern, according to Davis, that some suspects who “because of fear, intimidation, lack of linguistic skills, ... will not clearly articulate their right to counsel although they actually want to have a lawyer present[,]” is abated by what is required in demonstrating a valid Miranda waiver. Davis, 512 U.S. at 460, 114 S.Ct. 2350.
¶ 34. Davis carefully reiterated that, if a suspect effectively waives his or her right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him or her. Davis, 512 U.S. at 458, 114 S.Ct. 2350 *491 (citing North Carolina v. Butler, 441 U.S. 369, 372-76, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). But if a suspect affirmatively requests counsel at any time during the interview, he or she is not subject to further questioning until a lawyer is made available or the suspect reinitiates conversation. Id. (citing Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880). As mentioned, this “second layer of prophylaxis for the Miranda right to counsel” is “designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights[.]” Id. (quoting McNeil v. Wisconsin, 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), and Michigan v. Harvey, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990)). “But if a suspect makes reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.” Davis, 512 U.S.at 459, 114 S.Ct. 2350. “The likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards.” Id. (quoting McNeil, 501 U.S. at 178, 111 S.Ct. 2204).
¶ 35. Davis strikes a balance between the Miranda “procedural safeguards,” that are “not themselves rights protected by the Constitution” but measures “to insure the right against self-incrimination [is] protected,” and society’s interest for effective law enforcement. Davis, 512 U.S. at 457-61, 114 S.Ct. 2350. Davis explained:
In considering how a suspect must invoke the right to counsel, we must consider the other side of the Miranda equation: the need for effective law enforcement. Although the courts ensure compliance with the Miranda requirements through the exclusionary rule, it is police officers who must actually.decide whether or not they can question a suspect. The Edwards rale — questioning must cease if the suspect asks for a lawyer — provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess -wrong. We therefore hold that, after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.
Id. at 461, 114 S.Ct. 2350.
¶ 36. This Court may institute whatever rules and procedural safeguards it deems necessary to ensure the rights guaranteed by the Mississippi Constitution are secured. But we must be careful and circumspect in doing so, as we may neither enlarge nor modify these rights. We must also be accurate when construing or speaking to our constitutional provisions, as the misstatements in Johnson, Gray, and McGilberry illustrate.
¶ 37. Never has this Court held that the Mississippi Constitution provides greater protection than the U.S. Constitution to criminal suspects who invoke the right of counsel during custodial interrogations. Indeed, have we consistently used federal eases as guidance with regard to the Edwards rule. See Holland, (relying on the Eleventh Circuit) and Barnes (relying on the Supreme Court).
CONCLUSION
¶ 38. We affirm the Scott County Circuit Court’s judgment of conviction and sentence.
*492 ¶ 39. CONVICTION OF ARSON AND SENTENCE OF EIGHTEEN (18) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $1,500, RESTITUTION TO THE OWNERS OF THE DWELLING HOUSE IN THE AMOUNT OF $10,000, AND RESTITUTION TO THE VICTIM IN THE AMOUNT OF $3,000. THE FINE, RESTITUTION TO THE OWNERS OF THE DWELLING HOUSE, AND RESTITUTION TO THE VICTIM SHALL BE MADE IN MONTHLY INSTALLMENTS, TO THE CIRCUIT CLERK OF SCOTT COUNTY, MISSISSIPPI, IN THE AMOUNT 'OF $150 WITH THE FIRST PAYMENT DUE NINETY (90) DAYS FOLLOWING RELEASE. APPELLANT SHALL BE GIVEN CREDIT FOR THIRTEEN (13) DAYS OF JAIL TIME SERVED.
WALLER, C.J., RANDOLPH, P.J., AND CHANDLER, J„ CONCUR.' LAMAR AND COLEMAN, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING,J.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Williamson correctly stated that "One’s right to counsel under Mississippi law attaches earlier in the day than does the federal right.” Williamson, 512 So.2d at 876 (citing Page v. State, 495 So.2d 436, 439 (Miss.1986)).