KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 40. Because the Mississippi Constitution provides greater protection to criminal suspects’ invocation of counsel during interrogations than does the United States Constitution and because the plurality attempts to undermine the sound constitutional analysis of Downey v. State, 144 So.3d 146 (Miss.2014), and Holland v. State, 587 So.2d 848 (Miss.1991), I decline to endorse the plurality’s logic, which relies upon incorrect statements' of Mississippi law and inapplicable federal precedents. Instead, I respectfully provide the correct analysis of Franklin’s invocation of counsel under the Mississippi Constitution and this Court’s precedent in Downey and Holland.
¶ 41. During the suppression hearing, the trial court questioned Inspector Tom Rigby, the law enforcement officer who had interrogated Franklin. Rigby provided the following information regarding Franklin’s claimed invocation of counsel:
Q. At what point in time of the interview was it that he said that he needed some help?
A. It was, to the best of my knowledge, Your Honor, it was closer to the end.
Q. Close to the end?
A. Yes, sir.
Q. Now, the Miranda warning, the waiver of the rights — well, the Miranda warning was that he had the right to have an attorney.
A. Yes, sir.
Q. Did you advise him of that?.
A. Yes, sir, I did.
Q. And did he respond to that when you told him that?
A. He understood it, Your Honor....
Q. Now, when you advised him of his right to have an attorney, was that before he said he needed some help?
A. Yes, sir, yes, sir, it was.
Q. It was before that?
A. Uh-huh. Yes, sir.
Q. It was after you told him that he could have an attorney, he said he needed some help?
A. Yes, sir.
Q. Now, Mr. Rigby, tell me, was he asking for an attorney when he said he needed some help?
*493 A. No, sir, Your Honor, I didn’t take it that he was asking for an attorney. It was something to his condition.
Q. Did he ever again at any time say he wanted an attorney?
A. No, sir, to the best of my knowledge, he did not.
¶ 42. It is undisputed that invocations of the right to counsel during the course of police interrogation fall under Fifth Amendment-related jurisprudence. Davis v. United States, 512 U.S. 452, 456-57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Under rights attendant to the Fifth Amendment’s right against self-incrimination, if a person under arrest invokes his right to counsel during the course of interrogation, interrogation must cease until an attorney is present. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1880, 68 L.Ed.2d 378, 386 (1981). The right to have an attorney present must be “specifically invoked.” Edwards, 451 U.S. at 482, 101 S.Ct. 1880.
¶ 43. In Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the United States Supreme Court held that “the suspect must unambiguously request counsel.” Id. at 459, 114 S.Ct. 2350 (emphasis added). Thus, the accused’s Fifth Amendment-related rights do not “require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney.” Id.
¶ 44. But, just as a right against self-incrimination is articulated in the Fifth Amendment to the United States Constitution, U.S. Const, amend. V (“No person ... shall be compelled in any criminal ease to be a witness against himself’), a similar right against self-incrimination exists in Article 3, Section 26, of the Mississippi Constitution. Miss. Const, art. 3, § 26 (“[The accused] shall not be compelled to give evidence against himself.”).
¶ 45. In Downey v. State, 144 So.3d 146 (Miss.2014), an intellectually disabled and functionally illiterate woman was arrested and taken into custody for burglary of a dwelling. Id. at 149. The arresting officer read Downey her Miranda[3] rights and the following exchange occurred:
Officer: Now we are going to talk for a just a little bit, ok, and then I’m gonna try and get you a bond set, stuff like that or whatever we need to do so we can get you on out of this jail, ok? (Officer points out Miranda rights on paper, and reads them aloud.) You haven’t been promised or threatened anything, have you? Nobody’s treated you bad or anything? They treated you good at the jail last night?
Downey: Yeah, but I didn’t sleep last night.
Officer: Nancy can you put your signature right there for me in those two spots?
Downey: (signs the paper) I got a lawyer.
Officer: Do what?
Downey: I got a lawyer.
Officer: Who is that?
Downey: Brad Sullivan.
Officer: Brad who?
Downey: Brad Sullivan. He works at Trustmark Bank.
Officer: Do you want to talk to me or do you want to use him? I’ve got to know that okay?
Downey: I could use him.
Officer: Is he a tall guy? Real tall young man? I know a Brad, but I don’t think he is a Sullivan. But he works *494 there at the bank. He works for Sullivan and.Sullivan? Brad Thompson?
Downey: Yeah.
Officer: How does he represent you?
Downey: He did me ... when we had a wreck.
Officer: That’s fíne, Nancy, but.what I need to know is do you want to talk to me now.... I mean I don’t know if I can get him over here right this minute. Do you want to talk with me now, without him, or do you want to wait for him?
Downey: I’ll talk with you.
Id. at 149-50. At issue in Downey was whether the suspect’s saying “I got a lawyer” and “I could use him” invoked her right to remain silent until an attorney was present. Id. at 152. The plurality opines that “it is ... arguable that Downey’s statement met the requisite level of clarity required by Edwards. Therefore, neither Davis nor [sic] Holland was applicable.” (PL Op. at ¶ 31). At the time this Court decided Downey, both the majority and the dissent — having been joined by Justice Pierce — agreed that Downey’s statements were insufficient to invoke her right to counsel under federal law. See Downey, 144 So.3d at 151-52 (applying a test used to specifically to identify “ambiguous” invocations of counsel); id. at 154 (Coleman, J., dissenting). More specifically, the dissent averred that “[l]ike the Supreme Court of the United States in Davis, we too should decline to ‘require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney.’ In the case sub judiee, the defendant made ambiguous statements regarding counsel, and the officer asked questions to clarify the ambiguity.” Id. at 154 (Coleman, J., dissenting) (quoting Davis, 512 U.S. at 459, 114 S.Ct. 2350). Thus, at the time Dow-ney was decided, it was undisputed by anyone on this Court that Downey’s invocation of counsel failed to meet the standard articulated by the United States Supreme Court in Davis, that an invocation of counsel must be “unambiguous.” Davis, 512 U.S. at 459, 114 S.Ct. 2350.
¶46. However, the majority of this Court in Downey declined to be constrained by the federal standard articulated in Davis, upon which today’s plurality relies extensively. (PI. Op. ¶¶ 26-27; 35-36) (block-quoting the precedent in Davis). We held that “Davis does not require Mississippi to follow the minimum standard that the federal government has set for itself. We are empowered by our state constitution to exceed federal minimum standards of constitutionality and more strictly enforce the right to counsel during custodial interrogations.” Id. at 151; compare with (PI. Op. at ¶37) (“Never has this Court held that the Mississippi Constitution provides greater protection than the federal constitution to criminal suspects who invoke the right of counsel during custodial interrogations.”). The Mississippi Constitution protects the invocation of the right to counsel during the course of interrogation, whether the criminal suspect’s invocation is ambiguous or unambiguous. Id. We explicitly declined to adopt the test of whether an invocation of counsel was “unambiguous” in accordance with Davis, holding instead that “[t]he three-part test established in Holland adequately guards the right to counsel for custodial suspects who may not know that the right to counsel must be unambiguously asserted, or that the right exists regardless of the amount of time it might take to obtain counsel.” Id. at 151. In other words, in Mississippi, suspects who “because of fear, intimidation, lack of linguistic skills, or a variety of other reasons ... will not [unambiguously] articulate their right to counsel although they actually want to have a lawyer present” nevertheless enjoy constitutional protection. Davis, 512 U.S. at 460, 114 S.Ct. 2350.
*495 ¶ 47. This Court therefore endorsed a three-part test to determine whether a trial court erred in failing to suppress a criminal defendant’s confession or statement taken after his or her invocation of the right to counsel during the course of custodial interrogation: (1) whether counsel was requested; (2) if the request for counsel was ambiguous, whether the appropriate questions to identify the counsel requested were asked; and (3) if the interrogation continued without counsel, whether there was a valid Miranda waiver. Downey, 144 So.3d at 150-53; see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶ 48. The plurality opines that the Holland test results in a legal nullity, because the third prong requires that there be a valid Miranda waiver, a universal prerequisite for a valid custodial interrogation, (Pl.OpJ 31) (“[W]hat must be gleaned from Davis is that Davis’s instruction that law enforcement officers may continue questioning a suspect until and unless the suspect clearly requests an attorney, is realized on the understanding that ‘the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves’. This clearly adjoins with the third prong related in Holland: if interrogation continued without counsel, was there a valid Miranda waiver?”) (internal quotations omitted). This criticism of Holland belies logic and strains credulity. The third prong of the Holland test does not address the initial waiver of rights under Miranda. Instead, it addresses any and all statements given to police after the suspect’s invocation of a right to counsel. Holland, 587 So.2d at 860. As the plurality concedes (P1.0p. ¶ 31), the United States Supreme Court has held
when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Edwards, 451 U.S. at 482, 101 S.Ct. 1880. In light of federal precedent requiring that the government show a “valid waiver” to continue questioning after an accused has invoked his right to counsel (or, as is more commonly known, one of his Miranda rights), why then would Mississippi law, specifically discussing invocations of a right to counsel during police questioning, look to the original Miranda waiver, read at the beginning of the interrogation, and not to the required subsequent waiver of his specifically invoked Miranda rights? For example, the majority in Downey specifically quoted this exchange:
Officer: That’s fine, Nancy, but what I need to know is do you want to talk to me now.... I mean I don’t know if I can get him over here right this minute. Do you want to talk with me now, without him, or do you want to wait for him?
Downey: I’ll talk with you.
Downey, 144 So.3d at 150. The fact is that the analysis for a valid waiver of Miranda rights prior to interrogation and a valid waiver of rights after they have been invoked during the course of interrogation closely resemble each other. This is because both analyses focus on competency and voluntariness. However, to suggest, as the plurality does, that Holland has been subsumed into federal case law be *496 cause it merely looks to the voluntariness •of the original Miranda waiver is inaccurate.
¶ 49. Turning to the analysis that this Court articulated in Downey and Holland, in order for us to decide whether Franklin’s rights were violated, we first must determine whether Franklin invoked his right to counsel. Unambiguous invocations of one’s right to counsel are readily identifiable and usually involve a suspect’s saying “I want a lawyer.” See Downey, 144 So.3d at 151; accord Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984) (per curiam) (“[A] statement either is such an assertion of the right to counsel or it is not.”). Equivocal or ambiguous requests for counsel require more consideration because there is no bright-line rule about what types of statements constitute equivocal requests for counsel. Holland, 587 So.2d at 856-57. Moreover, a request for counsel can occur any time during the interrogation. Id. But “[a] defendant must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Barnes v. State, 30 So.3d 313, 317 (Miss.2010). Accordingly, in Holland, this Court held that a suspect asking detectives “Don’t you think I need a lawyer?” invoked his right to counsel. Holland, 587 So.2d at 856-57. Similarly, in Downey, this Court determined that a suspect’s statements that she “had an attorney” and “I could use him” were sufficient to invoke her right to counsel. Downey, 144 So.3d at 151-52. Now we must determine whether Franklin articulated “his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Barnes, 30 So.3d at 317. In the context of this particular interrogation, Franklin’s request for “help” was insufficient to invoke counsel. A request for “help,” in the middle of the interrogation, could constitute a call for any number of different types of aid, including medical, legal, or spiritual assistance. It was not reasonable in this instance for Franklin to expect Inspector Rigby to discern that the particular sort of help he wanted was that which could be provided by a lawyer.
¶ 50. The plurality bemoans that we must be careful in not modifying the rights secured by the Mississippi Constitution. (Pl.OpA 36). The plurality also cautions that “[w]e must ... be accurate when construing or speaking to our constitutional provisions.” (PLOp-¶ 36). Yet the plurality misapplies and misstates a constitutional test articulated by a sound majority of this Court in two of our prior decisions: Holland and Downey. With respect to the plurality’s gross misapplication of the Mississippi Constitution, Downey, and Holland, I respectfully dissent. To the extent that the plurality opinion inadvertently reaches the right result under Mississippi law, I concur in that result.
DICKINSON, P.J.,,AND KING, J„ JOIN THIS OPINION.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).